UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALLEN ATKINS,

                    Plaintiff,                         Case No. 2:22-cv-150

v.                                                     Honorable Paul L. Maloney

DAVID DAWDY et al.,

                    Defendants.
_____/


## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has filed a fifty-five-page complaint, which includes 406 numbered paragraphs and dozens and

dozens of separate claims. Plaintiff sues more than 80 defendants. His allegations span a three-

year period beginning in the summer of 2019. At that time, Plaintiff was incarcerated at the

Muskegon Correctional Facility (MCF). Plaintiff names 5 Defendants from MCF: Defendants

Mercer, Brown, Kludy, Unknown Party #1, and Barnes.

        During August of 2019, Plaintiff was transferred from MCF to the Carson City

Correctional Facility (DRF). Plaintiff stayed at DRF for about five months. Then he was

transferred to the Kinross Correctional Facility (KCF). Plaintiff remained at KCF for about 8

months. He was then transferred to the Chippewa Correctional Facility (URF), where he remains.

Plaintiff sues Defendants from each facility.

        Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or

without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the

reasons set forth below, the Court will drop as misjoined all parties except for the MCF Defendants, and dismiss Plaintiff's claims against the dropped parties without prejudice.

Additionally, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against the MCF Defendants, with the exception of Plaintiff's First Amendment retaliation claim against Defendant Mercer relating to Mercer's writing of a false misconduct ticket in response to Plaintiff's request to speak to Mercer's supervisor.

The Court's dismissal of all but one of Plaintiff's pending claims, has an impact on the viability of Plaintiff's several pending motions. Each is addressed below.

<u>Discussion</u>

## I.    Factual allegations

During July of 2019, Defendant Mercer worked in the MCF law library. Plaintiff asked Mercer to photocopy legal documents for his *pro per* supplemental brief to be filed in the Michigan Court of Appeals as part of the direct appeal of his convictions. Plaintiff asked to speak to Mercer's supervisor. She used a racial slur and accused Plaintiff of trying to get her "in trouble." (Compl., ECF No. 1, PageID.10.) She pressed her panic button.

Defendants Kludy and Brown, along with other officers, responded to the panic button. Kludy was an inspector at MCF. Brown was a corrections officer at MCF.

Brown escorted Plaintiff to a "filthy isolation cell" in the segregation area. (*Id.*) While Plaintiff was in that cell, Defendant Unknown Party #1, an MCF corrections officer, refused to relocate Plaintiff or give him cleaning supplies. Plaintiff claims Defendant Unknown Party #1 also denied Plaintiff's requests for sandals, toilet paper, cleaning utensils, and medical care. Plaintiff was released from segregation within less than two hours. (*Id.*, PageID.10–11, ¶¶ 36, 45.)

Upon Plaintiff's release, Defendant Kludy returned Plaintiff's legal folder, but confiscated some of the contents claiming they were contraband.

Plaintiff reports that days later, Defendant Unknown Party #1 told Plaintiff that Defendant Mercer wrote a false misconduct report because of Plaintiff's request for copies and request to see her supervisor.

Plaintiff grieved Mercer, Brown, Kludy, and Unknown Party #1, but he was told by Defendant Barnes, the MCF grievance coordinator, that her supervisors told her to process only the grievance against Mercer.

That is the entirety of Plaintiff's factual allegations relating to his time at MCF. His allegations regarding his stays at the other prisons have no connection to his allegations regarding MCF except that he claims that he was transferred to DRF in retaliation for filing (or attempting to file) the grievances mentioned above. Plaintiff does not elaborate by explaining who effected the retaliatory transfer.

Plaintiff seeks a declaration that Defendants violated his constitutional rights. Plaintiff also asks the Court to award him 2 billion dollars in punitive damages and 2 billion dollars in nominal damages from each Defendant. Plaintiff also seeks an award of 2 billion dollars in compensatory damages from Defendants Unknown Party and Brown.

## II.    Misjoinder

Plaintiff brings this action against dozens of Defendants alleging discrete events that occurred at four prisons over approximately three years.

### A.    Improper joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. In Plaintiff's complaint, the Court can discern no particular rhyme or reason for the order in which he presents Defendants in the case caption; but the chronological presentation of Plaintiff's factual allegations supports identifying Defendant Mercer as the appropriate starting point for the joinder analysis. By accepting Plaintiff's

chronological presentation of the facts the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff alleges that Defendant Mercer refused to copy Plaintiff's appeal documents and thereby interfered with Plaintiff's access to the courts. (Compl., ECF No. 1, PageID.51, ¶ 385.) Plaintiff may join to that claim all claims he has against Defendant Mercer and all claims against others that arise out of the same transaction or occurrence as his "access to the courts" claim against Mercer.

Plaintiff alleges other claims against Mercer. He contends that Mercer wrote a false misconduct report in retaliation for Plaintiff's complaint regarding Mercer's refusal to copy the appeal documents. (*Id.*, PageID.47, ¶¶ 363, 369.) Plaintiff also alleges that Mercer retaliated against Plaintiff for exercising his First Amendment rights by her "involvement in Plaintiff's transfers . . . ." (*Id.*, PageID.48, ¶ 367.) Those claims are properly joined under Rule 18(a).

Plaintiff may also join his claims against other parties to the extent those claims arise out of the same transaction or occurrence and present questions of law or fact common to all. There is certainly a question as to whether Plaintiff's claims against the other MCF Defendants arise out of the same transaction or occurrence as Plaintiff's claims against Mercer. But, construing the complaint liberally, and giving Plaintiff the benefit of every doubt, the Court concludes that the claims against the MCF Defendants are properly joined. But that is as far as liberal construction can take Plaintiff.

There might be an argument that Defendants Whitmer, Washington, or the MDOC are somehow liable for the alleged misconduct of Mercer, Kludy, Brown, Barnes, or Unknown Party because, if one looks far enough up the organizational chart, those MCF Defendants answer to

Whitmer, Washington, and the MDOC. But, wisely,[1] Plaintiff does not make that argument. There is no overlap between the claims he raises against the MCF Defendants on the one hand, and the claims he raises against Whitmer, Washington, and the MDOC, on the other. (Compl., ECF No. 1, PageID.46–55, ¶¶ 360–406.

Moreover, Plaintiff's claims against the Defendants from other prisons, though they may involve some common legal questions, are factually distinct and they certainly do not rise out of the same transactions or occurrences as Plaintiff's claims against the MCF Defendants. Accordingly, the Court concludes that the rest of the parties named and Plaintiff's claims against them are misjoined.

**B.    Remedy**

Because the Court has concluded that Plaintiff has improperly joined to this action multiple Defendants and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D.

---

[1] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

8

Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam), and *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's first allegations relating to his time at DRF arise during November of 2019. (Compl., ECF No. 1, PageID.12.) Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the other Defendants from DRF as well as the Defendants from the other facilities where he was housed after DRF, and he will not suffer gratuitous harm if claims against these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Dawdy, Fair, Ward, Demenov, Shields, Cozort, Bernard, Anderson, Livermore, Ware, Mills, Ferrero, Conner, Marble, Blair, Haase, Riggs, Cook, Vansloten, Hill, Savoie, Storey, Curtis, Vieau,

Lipponen, Koben, Stevenson, Officer Hofbauer, Menard, Manitowabi, Forrest, Larson, Golloday, Gauderer, Dr. Clark, Woodin, Howland, Leblanc, Wood, Costner, Altshuler, Wilanowski, Farrish, Faha, Lisa Beecher, Gustafson, McLean, Grievance Coordinator Hofbauer, Hoffman, Erickson, Blair, Eerdmans, Newton, Wonnacott, Benoit, Miilu, Nolan, Edington, Olmstead, Horton, Corrigan, Warden Clark, Lovin, Vieau, Derry, D. Brown, Nelson, Dodds-Dugan, Atkison, MDOC, Washington, Theut, Whitmer, Watson, Grindinghouse, Maclaren, and Miller from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. Plaintiff is cautioned that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

11

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Access to the courts

Plaintiff's initial claim against Defendant Mercer asserts that her failure to copy his appeal documents during July of 2019 interfered with Plaintiff's access to the courts in violation of the First Amendment. (Compl., ECF No. 1, PageID.51, ¶ 385.) Plaintiff raises a similar claim against

Defendant Kludy. (*Id.*, ¶ 384.) He alleges that Kludy interfered with Plaintiff's right to petition the government by wrongfully confiscating legal papers relating to Plaintiff's direct appeal.[2]

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.

---

[2] The right to access the courts is simply "one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *see also Cruz v. Beto*, 405 U.S. 319, 321 (1972) ("But persons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes 'access of prisoners to the courts for the purpose of presenting their complaints.' [citations omitted]."). Although Plaintiff presents this claim against Kludy as a violation of his right to petition, because his petition was directed to a court, it is properly analyzed under authorities relating to the right of access to the courts.

13

1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff reports that he missed a deadline on his direct appeal as the result of Mercer's refusal to make copies and Kludy's confiscation of certain papers. But Plaintiff only implies, he does not allege, that he lost a remedy. Review of the publicly available docket for Plaintiff's direct appeal[3] indicates that even though he may have missed the initial deadline, he lost nothing. Plaintiff

---

[3] Even when assessing whether the complaint states a claim, "a court may take judicial notice of other court proceedings . . . ." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir.

filed an initial *pro per* supplemental brief during July of 2019 and an additional *pro per* supplemental brief during January of 2020. The court of appeals did not preclude Plaintiff from filing any brief because it was late. Because Plaintiff has failed to allege any lost remedy, he has failed to state a claim for denial of access to the courts. Plaintiff access-to-the-courts claims against Mercer and Kludy, therefore, will be dismissed.

### B.    Interference with administrative grievances

Plaintiff alleges that Defendant Barnes denied Plaintiff his Fourteenth Amendment right to due process by failing to process Plaintiff's grievances. (Compl., ECF No. 1, PageID.55, ¶ 406.) Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Thus, because Plaintiff has no liberty interest in the grievance process, any attempts to interfere with his use of the grievance system did not deprive him of due process. Plaintiff's due process claim against Defendant Barnes will, therefore, be dismissed.

### C.    Deprivation of legal documents without due process

Plaintiff also claims that Defendant Kludy violated Plaintiff's due process rights by confiscating Plaintiff's legal papers without preparing a contraband removal record, notice of destruction, or a notice of intent to conduct an administrative hearing. (Compl., ECF No. 1,

---

2010). The Michigan Court of Appeals docket for Plaintiff's direct appeal is available at https://www.courts.michigan.gov/c/courts/coa/case/342467.

PageID.54, ¶ 402.) Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, an adequate state post-deprivation remedy is, or at least was, available to him. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Kludy will be dismissed.

### D.    Eighth Amendment violations by Unknown Party #1 and Brown

Plaintiff claims that Defendants Unknown Party #1 and Brown violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment when they denied Plaintiff's requests to be removed from the filthy isolation cell, for shower shoes, for toilet paper, and for cleaning supplies. (Compl., ECF No. 1, PageID.52, ¶ 391.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Powell v. Washington*, 720 F. App'x 222, 228 (6th Cir. 2017); *Lamb v. Howe*, 677 F. App'x 204, 209–10 (6th Cir.2017). "[T]he length of exposure to the conditions is often

17

paramount." *Id.* (concluding that exposure to foul cell conditions, including human waste, for four hours did not warrant relief).

Plaintiff's allegations indicate that at some time between 8:30 and 10:30 he attended the law library. (Compl., ECF No. 1, PageID.10, ¶ 36.) While he was there, Defendant Mercer pushed her panic button, which prompted Plaintiff's removal to "a filthy isolation cell." (*Id.*, ¶ 38.) He was released "before 10:30 a.m." (*Id.*, PageID.11, ¶ 45.) Plaintiff was subjected to only a temporary inconvenience; accordingly, he has failed to state an Eighth Amendment claim against Defendants Unknown Party #1 or Brown.

### E.    Retaliation

Finally, Plaintiff contends that Defendants Mercer, Kludy, and Barnes retaliated against Plaintiff because Plaintiff engaged in conduct protected by the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Defendant Mercer

Plaintiff alleges that Defendant Mercer wrote a false misconduct ticket against Plaintiff and, somehow, was involved in Plaintiff's transfer, in retaliation for Plaintiff exercising his First Amendment rights. (Compl., ECF No. 1, PageID.47, 48, ¶¶ 363, 367, 369.) Plaintiff does not

specifically identify the protected conduct that lies at the root of Mercer's retaliatory intent, but it appears that Mercer was motivated by Plaintiff's request to discuss with Mercer's supervisor Mercer's unwillingness to copy Plaintiff's legal documents. (*Id.*, PageID.10, ¶ 37.)

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's anticipated complaint to Mercer's supervisor was not a formal prison administrative grievance, but it might still be protected conduct.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity). The Court concludes that Plaintiff's allegations regarding his request to speak with Mercer's supervisor are sufficient to show the first element of a First Amendment retaliation claim.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff's allegation that Mercer filed a false misconduct against him suffices to show adverse action. *See Maben*, 887 F.3d at 266–67 (collecting cases). "[T]he mere potential threat of disciplinary sanctions is sufficiently adverse to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (citing *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988)).

The same is not true of Plaintiff's claim that Mercer was somehow involved in Plaintiff's transfer to DRF. The Court notes that Plaintiff alleges no facts to support his conclusion that Mercer was involved in that transfer. It seems unlikely that a person whose duties included making copies in the law library would bear the responsibility for transfer decisions. But, even if she did, Plaintiff has failed to allege facts to show that the transfer was adverse. "[T]ransfer from one prison to another prison cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (internal quotation marks omitted) (quoting *Mandela v. Campbell*, No. 97-5712, 1999 WL 357825, at *3 (6th Cir. May 26, 1999)). The Sixth Circuit has identified several exceptions to that rule, all of which depend upon there being some particular and significant negative consequence flowing from the transfer.[4] Plaintiff identifies no such consequence here. The Court concludes his allegations regarding the transfer describe "simply one of the ordinary incidents of prison life," *Mandela*, 1999 WL 357825, at *3, and do not support the inference that

---

[4] *See, e.g.*, *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010) (holding that transfer from general population in one prison to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action); *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (holding that transfer that affected the prisoner's ability to pay his lawyer was adverse action); *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009) (holding that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family were sufficiently adverse to be actionable).

20

the transfer rises to the level of adverse action. Accordingly, Plaintiff has failed to state a retaliation claim against Mercer arising from the transfer to DRF.

The third element of a First Amendment retaliation claim, a retaliatory motive, is easy to allege but it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

The Court reads Plaintiff's allegations to support an inference that the false misconduct report written by Mercer related directly to Plaintiff's conduct when asking to see Mercer's supervisor. If that is the case, the adverse action was plainly motivated by the protected conduct. Moreover, in some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). It appears that Mercer's allegedly false misconduct report followed closely on the heels of Plaintiff's request to speak with her supervisor.

The Court concludes that Plaintiff has stated a retaliation claim against Mercer based on Plaintiff's request to see Mercer's supervisor (protected conduct) which motivated Mercer to file a false misconduct report (adverse action). But to the extent Plaintiff attempted to state any other retaliation claim—for example, with regard to his transfer to DRF—his allegations fall short.

### 2.    Defendant Barnes

Plaintiff alleges that Defendant Barnes retaliated against Plaintiff for filing grievances by interfering with the processing of those grievances. (Compl., ECF No. 1, PageID.11, ¶¶ 48–50 and PageID.47, ¶ 362.) Those allegations fall short at the second step.

Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases). Refusing to process a grievance would not deter a person of ordinary firmness from engaging in protected conduct because it does not have any adverse consequences.

Prisoners do not have a right to an effective grievance procedure, and they suffer no consequences for filing a grievance that is not processed. It is true that a prisoner must exhaust available administrative remedies before bringing a civil-rights claim in court, *see* 42 U.S.C. § 1997e(a), but even assuming that Barnes improperly prevented Plaintiff from pursuing a particular grievance, Barnes could not have prevented Plaintiff from pursuing a civil rights claim based on an issue raised in those grievances. If Barnes thwarted Plaintiff's ability to use the grievance process, then the process was not "available" to Plaintiff for that claim, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001). Accordingly, with respect to Defendant

22

Barnes, the Court concludes that Plaintiff has failed to allege adverse action and consequently failed to state a retaliation claim against her.

### 3.      Defendant Kludy

Finally, Plaintiff contends that Defendant Kludy confiscated Plaintiff's legal papers in retaliation for Plaintiff's protected conduct. (Compl., ECF No. 1, PageID.11, ¶¶ 45–46 and PageID.47, ¶ 364.) Plaintiff has alleged protected conduct that preceded Kludy's actions: Plaintiff's attempt to complain to Mercer's supervisor. And Plaintiff has alleged adverse action: confiscation of legal papers. But Plaintiff alleges no facts to tie those two events together. He offers nothing to support the inference that Kludy acted because of Plaintiff's attempt to complain. For Mercer, the fact that Plaintiff was attempting to "get [Mercer] in trouble" supports the inference. The same is not true for Kludy. Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Kludy's confiscation of the legal papers was motivated by any of Plaintiff's protected conduct. Plaintiff's allegations do not even support the inference that Kludy was aware that Plaintiff may have engaged in protected conduct before the confiscation. Accordingly, Plaintiff fails to state a retaliation claim against Defendant Kludy.

## IV.   Plaintiff's motions

Plaintiff has filed several motions, including the following: a motion for temporary restraining order (ECF No. 3), a motion for reduction of filing requirements (ECF No. 4), a motion to amend or correct (ECF No. 7), a motion to supplement (ECF No. 8), a motion to serve the complaint (ECF No. 12), a motion for copies of Plaintiff's pleadings (ECF No. 13), and a motion for electronic service of process (ECF No. 19).

### A.      Temporary restraining order

Plaintiff's request for a temporary restraining order is tied to his claims against the URF Defendants. In light of the Court's dismissal of all claims against those Defendants, Plaintiff's

claims for a temporary restraining order are effectively moot. *See, e.g.*, *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally. The injunction in question is not of this character. It is not an injunction in the cause, and it deals with a matter lying wholly outside the issues in the suit."); *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) ("'[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'"); *King v. Zamiara*, 788 F.3d 207, 217–18 (6th Cir. 2015) ("[W]e affirmed the district court's dismissal of King's due process claim . . . . Because the due-process claim is not at issue in this suit, we may not grant injunctive relief to remedy an alleged due-process violation."). Plaintiff's motion will be denied.

### B.     Reduction of filing requirements

Plaintiff asks the Court to relieve him of the obligation to file two copies of the complaint. Plaintiff's motion will be granted.

### C.     Motion to amend caption

Plaintiff asks the Court to amend the caption to reflect his name as Allen Aikens rather than Allen Atkins. MDOC policy directive 03.01.110 governs prisoner or parolee name changes. It is based on the fundamental requirement that "[a] prisoner or parolee may change his or her name only by court order." MDOC Policy Directive 03.01.110 (effective Mar. 7, 2011).

Prisoners have often attempted to compel the MDOC to recognize different names, for example a religious name change under the Free Exercise Clause of the First Amendment or under the Religious Land Use and Institutionalized Persons Act (RLUIPA). This Court and the Sixth Circuit Court of Appeals have repeatedly rejected those attempts because the administrative convenience of permitting prison officials to use one name for a prisoner is simply too important to effective prison administration. *See, e.g.*, *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339,

24

340 (6th Cir. 1980) ("Prison administration presents unique difficulties and the burden imposed on the plaintiff in the instant case by the defendants' use of his non-Muslim name clearly is outweighed by the administrative difficulties and confusion which would confront prison officials in attempting to amend commitment papers of every prisoner who embraces the Islamic faith and changes his name."); *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) ("Spies has no 'constitutional right to dictate how prison officials keep their prison records. As we see this issue, the present question of name change usage relates to prison administration.'"); *Porter v. Caruso*, 479 F. Supp. 2d 687, 700 (W.D. Mich. 2007); *Piotrowski v. Michigan*, No. 1:12-cv-11, 2012 WL 652460 (W.D. Mich. Feb. 28, 2012).

Administrative convenience provides a compelling reason for this Court to follow suit. Plaintiff comes to the Court as an *in forma pauperis* prisoner. The PLRA amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). In addition, the PLRA prevents a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. 28 U.S.C. § 1915(g).

The limits imposed by the PLRA can only be effectively enforced if the Court can specifically identify the individual prisoner before it. Plaintiff was prosecuted, convicted, and imprisoned by the State of Michigan under the name "Allen Atkins"—his commitment name. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=742687. Even though MDOC policy permits the use of a different legal name, the same policy requires that all official MDOC forms and documents throughout a prisoner's incarceration and parole include the commitment name. MDOC Policy Directive 03.01.110 ¶ D. Because the Court is required to review MDOC

documents to fulfill the Court's obligation under the Prison Litigation Reform Act, 28 U.S.C.
§ 1915(a)(2), it is convenient and prudent to use the only name the MDOC will include on all of
its documents: Plaintiff's commitment name. As a consequence, Plaintiff's request to have the
Court use another name will be denied.

### D.      Motion to supplement

Plaintiff's motion to supplement relates to his motion for temporary restraining order.
Because that motion is moot, the motion to supplement is moot as well. The motion will be denied.

### E.      Motion to serve the complaint

Plaintiff asks the Court to direct the United States Marshal to effect service of a summons,
complaint, and the motions for injunctive relief that he filed with the complaint on all of the
Defendants. Service of process is addressed in the Court's order granting Plaintiff *in forma
pauperis* status. (ECF No. 6.) The Court will order service of the complaint on the only remaining
Defendant upon completion of the referral to the *Pro Se* Prisoner Civil Rights Litigation Early
Mediation Program. Plaintiff's request is premature and unnecessary and will, therefore, be denied.

### F.      Motion for copies

Plaintiff also asks the Court to provide free copies of the documents he filed when he
commenced this case. Litigants generally bear their own litigation expenses. *Smith v. Yarrow*, 78
F. App'x 529, 544 (6th Cir. 2003). The Sixth Circuit Court of Appeals has concluded that an
indigent party is not entitled to free copies of his own pleadings:

> Although the petitioner was granted leave to proceed in the district court as a
> pauper, that status waives only "prepayment of fees and costs and security . . . ." 28
> U.S.C. § 1915(a). It does not give the litigant a right to have documents copied and
> returned to him at government expense.

*In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990). Therefore, the Court therefore will deny
Plaintiff's request for free copies.

### G.    Motion for electronic service

Plaintiff asks the Court to effect electronic service on all Defendants because of the burden that would otherwise follow if Plaintiff was required to prepare dozens of copies of the complaint for personal service. Because only Defendant Mercer remains, the Court will deny Plaintiff's motion as moot.

### H.    Motion to amend

Plaintiff further asks the Court to amend the docket to reflect that he named Maclaren, Miller, and Farrish as Defendants in this action. Plaintiff listed these three Defendants as parties in the complaint, but they did not initially appear on the docket of this action. These names now appear on the docket, and the Court considered these parties in its resolution. The Court will therefore deny Plaintiff's motion as unnecessary.

### <u>Conclusion</u>

Having reviewed Plaintiff's complaint under Rule 21, the Court concludes that Plaintiff has misjoined most of the Defendants he names in this action. The Court will drop as parties misjoined Defendants Dawdy, Fair, Ward, Demenov, Shields, Cozort, Bernard, Anderson, Livermore, Ware, Mills, Ferrero, Conner, Marble, Blair, Haase, Riggs, Cook, Vansloten, Hill, Savoie, Storey, Curtis, Vieau, Lipponen, Koben, Stevenson, Officer Hofbauer, Menard, Manitowabi, Forrest, Larson, Golloday, Gauderer, Dr. Clark, Woodin, Howland, Leblanc, Wood, Costner, Altshuler, Wilanowski, Farrish, Faha, Lisa Beecher, Gustafson, McLean, Grievance Coordinator Hofbauer, Hoffman, Erickson, Blair, Eerdmans, Newton, Wonnacott, Benoit, Miilu, Nolan, Edington, Olmstead, Horton, Corrigan, Warden Clark, Lovin, Vieau, Derry, D. Brown, Nelson, Dodds-Dugan, Atkison, MDOC, Washington, Theut, Whitmer, Watson, Grindinghouse, Maclaren, and Miller. The Court will dismiss Plaintiff's claims against them without prejudice.

With regard to the arguably properly joined claims that remain against Defendants Mercer, Brown, Kludy, Unknown Party #1, and Barnes, the Court has conducted the review required by the Prison Litigation Reform Act, and the Court determines that Plaintiff's complaint against Defendants Brown, Kludy, Unknown Party #1, and Barnes will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all of Plaintiff's claims against Defendant Mercer except for Plaintiff's First Amendment retaliation claim based upon Defendant Mercer's filing of a false misconduct charge against Plaintiff.

An order consistent with this opinion will be entered.


Dated:    September 14, 2022              /s/ Paul L. Maloney
                                         Paul L. Maloney
                                         United States District Judge