UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLEN ATKINS, #742687,

        Plaintiff,

v.

UNKNOWN MERCER,

        Defendant.
_____/

Case No. 2:22-cv-150

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant Mercer's motion for summary judgment (ECF No. 49).

Plaintiff — state prisoner Allen Atkins[1] — filed suit pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Atkins named over eighty Defendants in his verified complaint. (*Id.*, PageID.4-9.) At this stage of the case, one claim against one Defendant remains: Atkins's claim that Defendant Library Technician Mercer retaliated against him in violation of his First Amendment rights by issuing Atkins an insolence misconduct

---

[1] Plaintiff's name is listed as "Allen Atkins" on the Michigan Department of Corrections Offender Tracking Information System. *MDOC Offender Tracking System*, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=742687 (last visited March 22, 2024). However, Plaintiff signed all of his filings "Allen Aikens" and attested during his deposition that his name is "Allen Aikens" not "Allen Atkins." (ECF No. 50-11, PageID.448.) For the sake of consistency, the undersigned refers to Plaintiff by the name reflected in the MDOC's system and the docket sheet: Allen Atkins.

ticket after Atkins asked to speak to her supervisor. (*See* ECF No. 22, PageID.264 (Screening Op.).)

Mercer now moves for summary judgment. (ECF No. 49.) Mercer argues that there are no genuine issues of material fact, and that she is entitled to judgment because: (1) Atkins's request to speak to Mercer's supervisor was frivolous and therefore unprotected, (2) the manner in which Atkins requested to speak to Mercer's supervisor violated Michigan Department of Corrections (MDOC) policy, and therefore did not constitute protected conduct, (3) Mercer issued Atkins the insolence misconduct ticket because she felt harassed and degraded, not because he asked to speak to her supervisor, and (4) Mercer did not violate Atkins's clearly established First Amendment rights and is therefore entitled to qualified immunity. (ECF No. 50, PageID.359-372.) Atkins did not respond.

The undersigned respectfully recommends that the Court grant Defendant Mercer's motion for summary judgment. In the undersigned's opinion, Mercer has met her summary judgment burden under Federal Rule of Civil Procedure 56; there are no genuine issues of material fact, and Atkins's request to speak to Mercer's supervisor was *de minimis* and therefore frivolous. As such, the request did not rise to the level of protected conduct, and Mercer did not retaliate against Atkins in violation of his First Amendment rights. Furthermore, Mercer is entitled to qualified immunity.

## II.  Relevant Factual Allegations

Atkins says that he attended an 8:30 a.m. to 10:30 a.m. law library session at Muskegon Correctional Facility (MCF) at some point between July 20, 2019, and July 22, 2019. (ECF No. 1, PageID.10.) During the session, Atkins asked Defendant Library Technician Mercer to photocopy an appellate brief for him. Atkins says that the appellate brief was due by July 31, 2019. (*Id.*) But Mercer refused to make copies for Atkins, leading Atkins to ask to speak to Mercer's supervisor.

According to Atkins, Mercer responded to his request to speak to her supervisor by stating: "N— you want to get me in trouble huh?" Mercer then pressed her panic button. (*Id.*) Corrections officers came to the law library, handcuffed Atkins, and escorted Atkins to segregation. (*Id.*) Atkins says that Mercer later issued him a false retaliatory misconduct ticket. (*Id.*, PageID.11.)

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and

admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.  Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.* To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019). Defendant Mercer first argues that Atkins cannot satisfy the first element of his retaliation claim; Atkins's request to speak to Mercer's supervisor did not constitute protected conduct. (ECF No. 50, PageID.360.)

Protected conduct generally includes a prisoner's pursuance of oral and written grievances, *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), as well as his efforts to access the courts in "direct appeals, habeas corpus applications, and civil rights claims," *Thaddeus-X*, 175 F.3d at 391. However, prisoners "cannot exercise [the right to file grievances] in a manner that violates legitimate prison regulations or penological objectives." *Smith v. Campbell*, 250 F.3d 1032, 1037 (citing *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995)). "'Abusive or manipulative use of a grievance system [is] not . . . protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (alteration in original) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)). This includes the filing of frivolous grievances. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).

Construed as an oral grievance, Mercer argues that Atkins's request to see her supervisor was frivolous; Mercer was under no obligation to immediately review and respond to Atkins's request for photocopies. (ECF No. 50, PageID.361-364.) And Atkins in fact received his photocopies the same day. (*Id.*, PageID.362 (citing ECF No. 50-6, PageID.411 (Disbursement Authorization for Expedited Legal Mail).) Furthermore, Mercer contends that Atkins requested to see her supervisor in a manner that violated MDOC policy regarding prisoner insolence, rendering the request unprotected. (*Id.*, PageID.364.)

5

Per Atkins's complaint allegations, he asked to speak to Defendant Mercer's supervisor after she refused to provide him with copies of his appellate brief. (ECF No. 1, PageID.10.) In an affidavit attached to her motion for summary judgment, Mercer (now Vallier) attests that when Atkins came to the law library on July 22, 2019, she had yet to review his request. (ECF No. 50-4, PageID.402.) When Mercer told Atkins that his request was still pending, he became agitated and "began raising his voice." Mercer says that she felt threatened by Atkins's demeanor and behavior, as though Atkins sought to intimidate her into immediately tending to his photocopy request. (*Id.*, PageID.403.) Mercer therefore pressed her panic button. She later issued Atkins a Class II misconduct ticket for insolence.[2] (*Id.*) The pertinent portion of that Class II misconduct ticket, to which Atkins pleaded guilty, is shown below:

---

[2]   Attachment B to MDOC Policy Directive 03.03.105: *Prisoner Discipline* (effective July 1, 2018) defines insolence as: "Words, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee."

6

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **MISCONDUCT REPORT**  CSJ-228  10/10  4835-3228
>
> Prisoner Number: 742687
> Prisoner Name: A. Atkins
> Facility Code: MCF
> Lock: 3-138 A
> Violation Date: 07/22/2019
>
> Time and Place of Violation: 09:20 Library
> Contraband Removal Record Provided to Prisoner? ☐ Yes  Date ____  ☒ N/A
>
> Misconduct Class: ☐ I  ☒ II  ☐ III  426  Charge(s): Insolence
>
> Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses):
> At 9:20 on 07/22/2019 inmate Atkins 742687 was in the library and was agitated because his copy request was not completed. He asked why I denied them, I replied "they are not done and they have not been approved or denied." He continued to raise his voice to me and said, "I'm sure if I wasn't black, you would copy them." He stated, he needed emergency copies because of his deadline. I replied, "we do not do emergency copies." He then replied, "you have never read library policy". Prisoner Atkins loud angry voice caused me alarm and his words were meant to harass and degrade me. I ID'd Prisoner Atkins by OMNI face sheet and prior contact.
>
> Reporting Staff Member's Name (Print): Mercer
> Date and Time Written: 1330  07/23/2019
>
> **REVIEW**
>
> Reviewing Officer's Name (Print): SGT C. Garner
> Review Date and Time: 7-23-19 1KB
>
> Prisoner's Signature: X (signed)  Date: 07/23/19

(ECF No. 50-2, PageID.376.)

It bears repeating that Atkins did not respond to Defendant Mercer's motion for summary judgment. As such, he did not address Mercer's allegations that he spoke to her in a threatening manner during their July 22, 2019, encounter.[3] And

---

[3] Atkins did make conclusory allegations that the insolence misconduct ticket was false and retaliatory in his complaint, but Atkins provided no indication as to what rendered the misconduct ticket false (i.e. whether some or all of the facts alleged by Mercer were false). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue

7

insolent behavior is not protected conduct. *See Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir. 2008) (finding that the plaintiff's comments during his misconduct hearing were insolent and did not constitute protected conduct). But even setting aside Atkins's alleged insolence, the undersigned agrees that Atkins's request to see Mercer's supervisor did not rise to the level of protected conduct.

As acknowledged by the Sixth Circuit in *Maben*, "cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." 887 F.3d at 264–65 (collecting cases); *see also Roden v. Plont*, No. 2:17-CV-00188, 2019 WL 5275035, at *4 (W.D. Mich. Aug. 14, 2019) (finding that the plaintiff's complaint that food services refused to sanitize the entire lunch line after he found a worm or maggot in his banana was *de minimis*), *R. & R. adopted*, No. 2:17-CV-188, 2019 WL 4593514 (W.D. Mich. Sept. 23, 2019); *Good v. Spencer*, No. 2:21-CV-1, 2022 WL 9813754, at *4-5 (W.D. Mich. July 19, 2022) (finding that the plaintiff's complaints that an officer closed the dayroom eight minutes early, used profanity, and reviewed his prisoner file were *de minimis*), *R. & R. adopted*, No. 2:21-CV-1, 2022 WL 4354269 (W.D. Mich. Sept. 20, 2022).

The parties agree that Atkins asked to speak with Mercer's supervisor on July 22, 2019, because Mercer would not provide him with photocopies of his appellate brief during the 8:30 a.m. to 10:30 a.m. law library session. (ECF No. 1, PageID.10; ECF No. 50-4, PageID.402-403.) Mercer says that the reason she did not provide him

---

for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)).

8

with photocopies at that time was that she had yet to review Atkins's photocopy request. (ECF No. 50-4, PageID.402.) And Mercer provided a disbursement authorization form for expedited legal mail that Atkins submitted at 3:12 p.m. the same day, at least suggesting that Atkins's photocopy request was approved shortly after his interaction with Mercer. (*Id.*) Atkins does not contest any of these facts.

In the undersigned's opinion, Atkins's request to speak with Mercer's supervisor because she would not review and approve Atkins's request for photocopies during Atkins's law library session was *de minimis* and therefore frivolous. There is no evidence that Atkins was entitled to receive his photocopies during the 8:30 a.m. to 10:30 a.m. law library session, or that Mercer violated any policies or procedures by neglecting to immediately tend to his requests.[4] Accordingly, the undersigned respectfully recommends that the Court grant Defendant Mercer's motion for summary judgment.

Because it is the undersigned's opinion that Atkins was not engaged in protected conduct when he asked to speak to Mercer's supervisor on July 22, 2019, the undersigned does not address Mercer's second argument that Atkins's threatening behavior—and not Atkins's request to speak to Mercer's supervisor—was the but-for cause of Mercer's decision to issue the insolence misconduct ticket.

---

[4] Indeed, the legal photocopying procedure from another MDOC facility suggests that prisoners in the MDOC are entitled to legal photocopies "as soon as practical, but no later than three business days after receipt of a completed Legal Photocopy Disbursement Authorization form . . . ." (ECF No. 50-5, PageID.407.) There is no evidence that Atkins submitted his photocopy requests more than three days prior to July 22, 2019.

9

## V. Qualified Immunity

Defendant Mercer also asserts that she is entitled to summary judgment on qualified immunity grounds because she did not violate Atkins's First Amendment rights, and even if she did, the rights were not clearly established at the time of the violation. (ECF No. 50, PageID.368-372.) More specifically, Mercer contends that: "The contours of a prisoner's First Amendment right to file non-frivolous grievances have not been clearly defined enough for courts to know what is and is not frivolous, and so it is not reasonable to expect a prison employee to understand what is or is not a frivolous grievance." (ECF No. 50, PageID.371.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S.

223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, but existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (cleaned up) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In other words:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ––––, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because it is the undersigned's opinion that there are no genuine issues of material fact, and that Defendant Mercer did not violate Atkins's First Amendment rights, the undersigned need not consider whether the right at issue was clearly established as of July 22, 2019.[5] *Husted*, 810 F.3d at 440. It is the undersigned's opinion that Mercer is entitled to qualified immunity at this stage of the case.

VI. **Recommendation**

The undersigned respectfully recommends that the Court grant Defendant Mercer's motion for summary judgment. In the undersigned's opinion, Mercer has

---

[5] However, the undersigned acknowledges that at least one Magistrate Judge in this circuit has recommended that a prisoner's right to file frivolous or *de minimis* grievances is not clearly established, nor are the contours of a frivolous or *de minimis* grievance. *Harp v. Hallett*, No. 5:19-CV-13789, 2023 WL 8710575, at *8-9 (E.D. Mich. July 26, 2023).

met her summary judgment burden under Federal Rule of Civil Procedure 56; there are no genuine issues of material fact, and Atkins's request to speak to Mercer's supervisor was *de minimis* and therefore frivolous.  As such, the request did not rise to the level of protected conduct, and Mercer did not retaliate against Atkins in violation of his First Amendment rights.  Furthermore, Mercer is entitled to qualified immunity.

If the Court accepts this recommendation, this case will be dismissed.

Dated:  April 1, 2024                    /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).